# ULLMAN *v.* DISTRICT OF COLUMBIA.

PLEADING AND PRACTICE; APPELLATE PRACTICE; ASSIGNMENTS OF
ERROR; PRESUMPTIONS; POLICE REGULATIONS; JUNK-DEALERS;
EVIDENCE.

1. Offering testimony in his own behalf after the denial of his motion
   for judgment upon the close of the case in chief, is an abandon-
   ment by the defendant of his motion.
2. Where an information in the police court charges a junk-dealer with
   failure to report the purchase of certain articles in violation of
   the police regulations, without mentioning any specific regulation,
   and the defendant thereafter concedes that the prosecution was
   instituted under a given regulation, an assignment of error by
   him on an appeal by him from a judgment of conviction that the
   information is fatally defective for failure to identify the regula-
   tion upon which the prosecution is based, will not be considered.
3. A contention made for the first time in this court on appeal by one
   convicted in the police court of violating a municipal regulation,
   that the regulation was not published as required by the act
   of Congress under which it was promulgated, is not entitled to
   consideration.
4. While newspaper publication of police regulations formulated under
   the act of Congress of January 26, 1887 (24 Stat. 368) is an essen-
   tial prerequisite to the enforcement of any penalty under regu-
   lations so formulated, it will be presumed in a prosecution in the
   police court for a violation of one of such regulations many years
   after the date of the act of Congress authorizing them, that pub-
   lication was made as required thereby, but such presumption may
   be rebutted.
5. A police regulation the effect of the enforcement of which is to re-
   quire a junk-dealer to record and report to the police the pur-
   chase of articles, such as a sheet of copper, a metal bell, a water
   spigot, a lead pipe, and a gas jet, for which he paid twenty-eight
   cents, is not on its face unreasonable, but it is competent for the
   dealer if charged with such a violation of the regulation to show
   by proof the unreasonableness of the regulation as to such articles.
6. Questions propounded the accused in his own behalf in such a prose-
   cution as to whether he deemed it necessary to keep a record of
   the purchase of such articles; and whether the police had ever

complained to him of his failure to keep a record, are incompetent, and so also are questions propounded a witness in his behalf, a former police officer, as to whether the regulation had been enforced in reference to such articles while he was on the police force.

7. The mere assertion of the accused in such a prosecution and his witnesses, that it was impossible to keep a record of the purchase of such odds and ends is insufficient to show that the regulation is unreasonable.

No. 1222. Submitted January 22, 1903. Decided February 3, 1903.

In error to the police court of the District of Columbia.
*Judgment affirmed.*

The Court in the opinion stated the case as follows:

This is a suit brought to this court by writ of error issued to the police court of the District of Columbia, the purpose of which apparently is to test the reasonableness and validity of a municipal ordinance or regulation made by the Commissioners of the District in regard to "Pawnbrokers, junk-dealers, and persons engaged in the second-hand clothing business." The ordinance in question is as follows:

" Section 1. Every pawnbroker, junk-dealer, or person engaged in the second-hand clothing business shall keep at his place of business in a book or books in which shall be fairly written in English, at the time of each loan or transaction in the course of his business, an accurate account of such loan or transaction,— except in the case of junk-dealers as to the purchase of rags, bones, old iron and paper — setting forth a description of the goods, article or thing pawned, purchased or received on account of money loaned thereon or paid therefor; the time of receiving the same; the name and residence of the person pawning, selling, or delivering the same; the terms and conditions of loan, purchase or receipt thereof, including the period for which any such loan may be made, and all other facts and circumstances respecting such loan, purchase or receipt; which said book or books

shall during business hours be subject to the inspection of
the major of police or any officer of the Metropolitan Police
force of the District of Columbia by him authorized in that
behalf.

"Sec. 2. Every pawnbroker, junk-dealer or person en-
gaged in the second-hand clothing business shall every day,
except Sunday, before the hour of eleven o'clock in the fore-
noon, deliver to the major of police, on a blank form to be
prescribed by the Commissioners of the District of Colum-
bia, a legible and correct transcript from the book or books
provided for in the preceding section, showing the descrip-
tion of all and every article or thing received by him, whether
by sale, or in pawn or pledge, on the business day immedi-
ately preceding — except in the case of junk-dealers as to
the purchase of rags, bones, old iron and paper,— together
with, in the case of pawnbrokers, the number of the pawn
ticket issued therefor, the amount loaned thereon, and de-
scription of the person making the pledge; such transcript,
in the case of business done on Saturday, to be delivered,
as aforesaid, before eleven o'clock in the forenoon of the
following Monday."

The plaintiff in error, defendant in the court below, being
a junk-dealer and person engaged in the second-hand cloth-
ing business, was prosecuted in the police court on two
several informations there filed against him, one for failing
on March 27, 1902, to comply with the requirements of
section 1 of the foregoing ordinance by failing and neglect-
ing "to keep an accurate record of the purchase of certain
second-hand articles on the books kept for such purpose;"
the other, for failure and neglect on his part "to make a
report of articles purchased by him, which were a sheet of
copper, metal bell, a water spigot, a lead pipe, and a gas
jet," in violation of section 2 of the ordinance. A motion
was made to quash the information in each case, substan-
tially on the ground that the regulation was invalid. What
action was taken on this motion the record before us does
not disclose; and as the defendant afterward pleaded "not
guilty" in each case, we may assume that it was either

overruled or abandoned. Nor is the disposition of it important here, since the same questions are raised by the exceptions afterward taken. The two informations were then consolidated, as they practically related to the same transaction; and trial was had before the court without a jury.

The prosecution adduced testimony tending to prove its case. In the course of it some exceptions were reserved by defendant; but as no assignments of error have been based upon them, and no argument has been founded upon them, they require no consideration from us. Nor need we notice the motion for judgment in favor of the defendant which was interposed at the conclusion of the testimony for the prosecution, and which was denied, since the defendant abandoned it by proceeding thereafter to take testimony on his own behalf, and the questions sought to be raised thereby are sufficiently raised by the rulings thereafter made.

The appellant was called as a witness on his own behalf. He testified in substance that he kept a book or record in his place of business, but did not keep a record of such articles as were described by the witnesses for the prosecution (those stated in the information), for which he stated he paid the sum of 28 cents, because, as he said, " it was not possible for him to do so, as he handled some times many hundreds of pounds of iron and such odds and ends of articles as is claimed that he purchased in this case, and to make a record of each and every article purchased and carry on witness's business would not be possible."

Then he was asked whether he deemed it necessary to make a record of such articles and to repor the same to the major of police: and the question was excluded by the trial court, and exception was reserved. Next he was asked whether any complaint had previously been made to him by the police officer of his failure to keep a record and make a report: and this question also was excluded. Then he was asked whether it was possible for him at the time that he purchased the articles in question to make a record of them in a book, showing the person from whom they were bought, and a description of the person and the articles. At first,

this question was excluded, but afterward it was answered by the defendant to the effect that it was physically impossible for him to do so.

A former member of the police force, who had been such prior to 1893, was then called on behalf of the defendant, and was asked whether during his time on the police force it was deemed necessary for junk-dealers to keep a record of purchases of such articles as those mentioned in the information and to report the same to the major of police; and whether it was feasible, practical, or possible to keep such record or make such report, as was required by the regulation mentioned; and whether during his time on the police junk-dealers had been required to keep such record and make such report. All these questions were excluded.

Thereupon the defendant renewed his motion for a verdict in his favor, this being the substance of all the testimony in the case; and the motion was again denied. The defendant was then found guilty. Motion was made for a new trial and in arrest of judgment; and both motions were denied. Judgment was then pronounced against the defendant and a fine of ten dollars imposed: Whereupon a writ of error was sued out to remove the case to this court upon the exceptions taken at the trial.

*Mr. Joseph Shillington* and *Mr. Edwin Forrest,* for the appellant:

1. The informations were totally defective and insufficient to authorize the court to pass upon the guilt or innocence of the defendant for the reason, among others, that they failed to inform the defendant of the police regulation which it is claimed he violated, and this, it is submitted, is essential to advise the defendant, so that he may properly present his defense and objections to the claimed authority upon which the prosecution relies. Vol. 15, Encyc. Pl. & Pr. 426, and cases cited in note; 2 Cranch C. C. 356, 459. The acts of Congress of January 26, 1887, March 3, 1891, and February 26, 1902 were passed in relation to police regu-

lations, and different sets of the latter were made or claimed to have been made in accordance with the authority given by the several laws of the United States.

2. The act of January 26, 1887, requires as conditions precedent to the enforcement of any police regulation made by the Commissioners that it should be printed in a certain way, and that the penalty prescribed for its violation should not be enforced until thirty days after such publication. These conditions must be shown by the prosecution to have been complied with before the regulation can be enforced as a subsisting one. *Barnett* v. *President & Trustees of Town of Newark,* 28 Ill. 62; *People* v. *Supervisors San Francisco,* 27 Cal. 677; *State* v. *Council of Newark,* 30 N. J. L. 304; 1 Dill. Mun. Corp., Sec. 331; *Conboy* v. *Iowa,* 2 Iowa, 90 (1855); *Higley* v. *Bunce,* 10 Conn. 567 (1835); *State* v. *Hoboken,* 38 N. J. L. 110, 113; *Hoboken* v. *Gear,* 3 Dutch. (N. J.) 265; *Quincy* v. *Allegheny City,* 24 How. 364; *Clark* v. *Janesville,* 10 Wis. 136 (1859); *State* v. *Newark,* 30 N. J. L. 303; *People* v. *San Francisco,* 27 Cal. 655; Dill. Mun. Corp. (3d ed.), Sec. 331, p. 340; *Nat. Bank of Commerce* v. *Town of Granada* (C. C.), 48 Fed. Rep. 278; 54 Fed. Rep. 100; 4 C. C. A. 212.

3. The Commissioners in framing the so-called police regulations under the act of January 26, 1887, proceeded further than the mere promulgation of regulations governing a full inspection of the places where the business, such as the plaintiff was and is engaged in, should be carried on. It was sought to require of them that they should keep a record of their business as set forth in article 1 of the regulations of July 1, 1898, and for the failure so to do is the foundation for one of the informations in this cause, and it was also sought by section 2 of the same regulation to require that a report of articles purchased should be made to the major and superintendent of police, which is the subject of the second information filed against the defendant. These requirements sought to be enforced by the said regulations, it is submitted, fall beyond the authority of the Commissioners to enact and are not within the scope or spirit of the

authority conferred. This, it is submitted, is an unlawful interference with his business and not such a usual or reasonable regulation as was contemplated by the terms of the statute. While there has been no definition, so far as found, of what might be imposed as falling within the term " police regulation," yet it is apparent that these regulations sought to be enforced against the defendant do not fall within that category as embraced within the statute. Why should a junk-dealer who is licensed to carry on his business be required to do the things for the failure so to do he is prosecuted when other persons within the District of Columbia who are duly licensed are not required to make such record and report as the police regulation seeks to require? There is nothing apparent why such a discrimination should be made. Tiedeman on Limitations of Police Powers, Sec. 102, p. 289. The police regulation has no relation to or bearing upon the question of the protection of the public health, safety, peace, or morals, and therefore is not a proper or legal police regulation. *Lansburgh* v. *District of Columbia,* 11 App. D. C. 523. See also *Moses* v. *United States,* 16 App. D. C. 438; *Campbell* v. *District of Columbia,* 19 App. D. C. 140.

4. The police regulations in question fall within the law as laid down in *Fulton* v. *Dist. of Columbia,* 2 App. D. C. 431. The only purpose of having a report made to the major of police is to require of the owner of the property its deprivation by sale or otherwise during some period of time, no matter how small. There would be no reason in making such a report if the plain inference therefrom was not that the property should remain undisturbed in the possession of the junk-dealer until opportunity had been afforded the major of police or his subordinates to make an inspection. This might take days or weeks — there is no proof on the subject as to time. If it be a matter of even hours, under the decision of this court that is such a deprivation of ownership as is beyond the power even of Congress to do. The latter body, however, has by an act of Congress, approved March 3, 1891, enacted that no disposition of property

should be made by a pawnbroker until ten days after a report to the major of police.

5. The police regulation was not a usual and reasonable one and the record discloses that the court below sustained the objections of the plaintiff to any and all testimony tendered on this point.   He assumed because the regulation was claimed to have been made by the Commissioners, that therefore he should go no further; he should not attempt to inform himself by proof whether or no such regulation was a reasonable one or oppressive in its nature on the defendant's business.   This court, in several cases brought to it by writ of error, has given its opinion upon this matter in striking contrast to the ruling of the police judge.   See *Railroad Co.* v. *Dist. of Columbia,* 10 App. D. C. 127, 128; *Moore* v. *Dist. of Columbia,* 12 App. D. C. 537; *Dist. of Columbia* v. *Hazel,* 16 App. D. C. 287, 288; *Montz* v. *Dist. of Columbia,* 20 App. D. C. 568.   See also Dill. on Mun. Corp., Secs. 319–321, and notes; Beach on Pub. Corp., Secs. 90, 512, and cases cited in notes.

6. At the trial the defendant sought to introduce testimony tending to show the unreasonableness and oppressiveness of the police regulations, but on objection of the prosecution he was denied the opportunity.   This was clearly error, as shown by the decisions of this and other courts. *Moore* v. *The District, supra; Dist. of Columbia* v. *Sargeant,* 17 App. D. C. 265, 268; Beach on Pub. Corp., Sec. 513.

Mr. *A. B. Duvall,* Corporation Counsel, and Mr. *E. H. Thomas,* Assistant, for the District of Columbia.

Mr. Justice MORRIS delivered the opinion of the Court:

1. It is conceded by the defendant that the prosecution in this case was instituted under the regulation of July 1, 1898, which has been cited.   Yet reference is made to some other similar regulations and to various acts of Congress authorizing the Commissioners of the District to make police regulations, as if to raise an uncertainty as to the regula-

tion under which he was actually prosecuted, inasmuch as the informations do not identify the regulation. It is not apparent that this point requires any consideration by us.

2. In the second place, the point is made that, inasmuch as the act of Congress of January 26, 1887 (24 Stat. 368), which authorizes the Commissioners of the District to make police regulations for the government of the District, and among other things specifically " for causing full inspection to be made at any reasonable times of the places where the business of pawn-broking, junk-dealing, or second-hand clothing business may be carried on," and which in its second section requires " that the regulations herein provided for shall, when adopted, be printed in one or more of the daily newspapers published in the District of Columbia, and no penalty prescribed for the violation of such regulations shall be enforced until thirty days after such publications," it is incumbent on the prosecution to show that due publication had been made of the regulation on which this prosecution is based, and no such showing has been made. But one conclusive answer to this is that the record does not show that the point was made in the court below, and therefore should not be made here for the first time. Another answer is, that, after the lapse of so much time from the apparent date of this regulation, the court will presume that due publication was made of it, until the contrary is shown. Publication, of course, is an essential prerequisite to the enforcement of any penalty under ordinances or regulations formulated under the act of January 26, 1887; but after the lapse of so much time it would be unreasonable to require that in every case of prosecution such publication must be shown affirmatively. It will be presumed to have been made; but the presumption is one which may be rebutted by proper proof. See *State* v. *Atlantic City,* 34 N. J. L. 99; *Atchison* v. *King,* 9 Kans. 375; 1 Dillon on Municipal Corporations (4th ed.), Sec. 334, and notes.

3. But the main argument on behalf of the appellant is that the regulation of July 1, 1898, is in excess of the power

granted by the acts of Congress that have been cited; and
that the regulation is unreasonable.

Keeping in view the purposes for which these and other
similar regulations have been enacted, to the principal of
which, although not the only one, we had occasion to call
attention in the case of *Fulton* v. *District of Columbia*, 2
App. D. C. 431, we cannot find that the regulation in ques-
tion is unreasonable on its face.    It is not controverted that
reasonable regulation of the business in which the appellant
is engaged is within the purview of legislative and municipal
authority.    To keep a record of transactions is now usual,
we may say, almost universal, in all classes of business; and
the appellant admits that he does actually keep a record, and
he makes no complaint that it is a hardship for him so to do.
Nor does he complain of the requirement that his record
should be open to the inspection of the police.    His griev-
ance is that he is required to keep a record of such articles
as are mentioned in the information.    But the same reason
exists for keeping a record of these as of any other articles;
and it is no more difficult to make an entry of twenty-eight
cents than one of twenty-eight dollars.    We know from ex-
perience that it is the small affairs of business that need to
be most sedulously guarded; and the reason for police inspec-
tion is the same in this transaction as in others of greater
magnitude.    The regulation makes a reasonable exception
in regard to rags, bones, old iron and paper; but why sheets
of copper, and metal bells, and water spigots, and lead pipes,
and gas jets should be regarded as among trifles of which a
junk-dealer should not be required to make a record, even
though he paid only twenty-eight cents for them, we are
somewhat at a loss to understand.

Of course, the reasonableness of the regulation as to such
articles is a matter that could be tested by testimony; and
it was open to the plaintiff in error to offer testimony in
regard to it.    He is entirely right in his contention that he
was entitled so to do.    But he offered none that was com-
petent in law or admissible under the rules of evidence.
The two questions which were propounded to himself when

he was a witness on his own behalf, and which were excluded, were clearly inadmissible. Whether he deemed it necessary to keep a record of these articles or not, which was the tenor of one of the questions, is a plainly irrelevant matter. And whether the police officer had ever complained to him of his failure to keep a record, which is the purport of the second question, was likewise a matter the relevancy of which it would be impossible to establish.

As to the other witness who was called on his behalf, the questions propounded to him and excluded by the court were equally objectionable. He was asked whether the ordinance had been enforced in reference to such articles as here mentioned while he was on the police force. But the failure to enforce an ordinance at one time is no valid reason in law for not enforcing it at another time. Such failure might well be due to causes other than the hardship or unreasonableness of the ordinance. And the inquiry whether it was feasible, practical or possible to keep the required record, was merely a call for an expression of opinion without any statement of fact or grounds upon which to base it.

It is to be noticed that the only reason which the plaintiff in error himself gave upon the witness stand for the alleged impossibility to comply with the regulation was that " it was not possible to do so, as he handled sometimes many hundreds of pounds of iron and such odds and ends of articles," as he purchased in this case. But there was here no iron at all: and, as we have seen, old iron is specifically excluded from the category of things of which a record is required to be kept. And to call the articles by the designation of " odds and ends " does not make them so. He does not say within what time he handled all this iron and all these so-called " odds and ends." If it was difficult or impossible to keep the required record, it would seem that it ought not to have been difficult or impossible to show the fact. But no fact whatever was shown or offered to be shown. We have nothing but the mere assertion of the plaintiff in error, corroborated perhaps by a similar asser-

tion on the part of his witness, that it was impossible to keep the required record.

We find no error in the record.   The judgments appealed from will therefore be affirmed, with costs; and the cause will be remanded to the police court for execution of said judgments according to law.   And it is so ordered.   *Affirmed.*